**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re: Angel Guadalupe : | |
| : | |
| Surety Administrators, Inc. et al.,: | |
|     Appellants, : | |
| : | Case No. 3:06cv1167 (JBA) |
| v. : | LEAD |
| : | |
| Angel Guadalupe, : | |
|     Appellee. : | |

## Ruling on Bankruptcy Appeal [Doc. # 7]

This appeal has been consolidated with two other appeals arising out of related bankruptcy proceedings. (See Consolidation Order [Doc. # 11].) Appellant-creditors Surety Administrators, Inc. ("SAI"), Harco National Insurance Company ("Harco"), and Capital Bonding Corporation ("CBC") appeal pursuant to 28 U.S.C. § 158 from the Ruling on Debtor's Objections to Proofs of Claims, entered by United States Bankruptcy Judge Robert L. Krechevsky on June 13, 2006, which sustained the debtor's objections and disallowed the creditors' claims. See In re: Angel Guadalupe, No. 05-21109, 2006 Bankr. LEXIS 1246 (Bankr. D. Conn. June 13, 2006).[1] The creditors' proof of claim[2] arose out of debtor's alleged breach of his

---

[1] In February 2005, the creditors brought suit against the debtor for inter alia breach of contract in the Eastern District of Pennsylvania. See Surety Administrators, Inc. v. Guadalupe, No. 05cv878.

[2] Although SAI, Harco, and CBC originally filed three identical proofs of claim, it was clarified at the hearing before

1

employment contract as a bail bondsman for CBC, which was taken over by Harco and insured by SAI.  Appellants argue that the Bankruptcy Court erred in finding debtor to be credible and misconstrued the requirements of the contract at issue.  For the reasons that follow, Bankruptcy Judge Krechevsky's Ruling is affirmed.

I. **Background**

Familiarity is presumed with the underlying facts set out in the Bankruptcy Court's decision, which are summarized as follows.  Debtor, a licensed bail bondsman, entered into a Bail Bond Subagency Agreement ("Agreement") with CBC, a licensed surety bond agency whose owner and president until March 2004, when Harco took over, was Vincent Smith.  Under the Agreement, CBC would bear penal liability for bonds written by the debtor, provided that he met his obligations under the contract.  Guadalupe and three CBC employees worked out of an office in New Britain, Connecticut under the direction of Smith, with whom Guadalupe communicated regularly by telephone.  When Harco took over CBC's responsibilities, it relieved Smith of his duties and removed all CBC property from debtor's New Britain office.  On April 26, 2004, Harco sent Guadalupe a letter temporarily suspending his bail bond agent authority and terminated it fully

---

the Bankruptcy Court that only a single claim of $719,038.38 was at issue. (See Creditors Mem. [Doc. # 7] at 4 n.1.)

2

on May 19, 2004.  In October, Guadalupe stopped paying rent on the New Britain office property and left the premises at the year's end.  When he returned in spring 2005 to retrieve his CBC records, to his dismay, the landlord had removed and destroyed them.

On April 8, 2005, the debtor filed a Chapter 13 petition for relief under the Bankruptcy Code, after which each of the three creditors filed proofs of claim pursuant to Bankruptcy Code § 501, to which the debtor filed objections.  The creditors clarified that they were seeking a single unsecured claim of $719,038.38 arising out of the debtor's alleged breach of contract, covering the period February 2001 to October 2005.

**II. Standard**

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that "[o]n an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.  A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction

3

that a mistake has been committed." Metzen v. United States, 19 F.3d 795, 797 (2d Cir. 1994). The bankruptcy court's conclusions of law, however, are reviewed de novo. See In re Arochem Corp., 176 F.3d 610, 620 (2d Cir. 1999). Mixed questions of law and fact are also reviewed de novo. See In re Vebeliunas, 332 F.3d 85, 90 (2d Cir. 2003).

### III. Discussion

While appellants contend they have raised mixed questions of law and fact subject to de novo review, a significant portion of their appeal hinges on Judge Krechevsky's credibility assessment of Guadalupe, which is reviewed only for clear error. Appellants further urge that the Bankruptcy Court erroneously required them to prove that Smith considered the debtor to be in violation of the no-liability requirement of the Agreement or that he was otherwise dissatisfied with the debtor's performance under the Agreement, and that it also erred in finding that the creditors' invoicing practices bar their claim and that the Agreement and/or the law did not require the debtor to maintain duplicate records.

Under the Bankruptcy Rules, a creditor's properly executed and filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." Bankr. R. 3001(f). "To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." Reilly v. Novak, 245

4

B.R. 768, 773 (B.A.P. 2d Cir. 2000). If the objecting party produces this evidence, the burden shifts back to the claimant, with whom "[t]he ultimate burden always rests." Id. "The claimant must prove its claim by a fair preponderance of the evidence," In re G. Marine Diesel Corp., 194 B.R. 306, 310 (Bankr. E.D.N.Y. 1996), meaning both the validity and amount. "'To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.'" Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997) (quoting 4 L. Sand et al., Modern Fed. Jury Instructions 73.01, at 73-4 (1997)).

### A. CBC's Smith and the no-liability provision

The Bankruptcy Court concluded based on the language of the Agreement requiring debtor to act in accordance with the instructions of CBC "Supervising Agent" Smith, and crediting the testimony of Guadalupe that he obeyed Smith's directives, that the debtor did not breach his duties under the Agreement.[3] The language of the Agreement clearly ties Guadalupe's duties to Smith's directives, and the Bankruptcy Court found Guadalupe's

---

[3] The Agreement specifies that it "will be interpreted, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania." (Agreement ¶ 22.) "A cause of action for breach of contract under Pennsylvania law has three elements: '(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract, and (3) resultant damages.'" Gazarov v. Diocese of Erie, 80 Fed. Appx. 202 (3d Cir. 2003) (citing Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 884 (Pa. Super. Ct. 2000)); see also General State Auth. v. Coleman Cable & Wire Co., 365 A.2d 1347, 1349 (Pa. Cmwlth. 1976).

5

testimony credible.  Appellants' position that Smith's interactions with plaintiff are irrelevant to the question of breach is misplaced, since Guadalupe had no liability to CBC unless he breached the Agreement.

Under the Agreement Guadalupe agreed to "solicit and write business; collect and promptly transmit to Supervising Agent all premiums . . . and collateral according to such routines as may be prescribed by the Company and the Supervising Agent; see to it the persons bonded appear in court when required; adjust or assist in the adjustment of claims if and as requested; and in general, use its best efforts to further the interest of the Company and the Supervising Agent."  (Agreement ¶ 3(a).)  "So long as Sub-Agent (Guadalupe) complies with each and every obligation owed to Supervising Agent and the Company hereunder and otherwise, . . . the Supervising Agent will bear the penal liability exposure with respect to all Bonds written by the Sub-Agent and the Designated Sub-Sub Agents within their scope of authority."  (Id. ¶ 8(a)(i).)  In addition, the debtor contracted to "comply with all rules and regulations of the Company and Supervising Agent, . . . [and] strictly comply with all instructions given by the Company or Supervising Agent."  (Id. ¶ 12.)

First, there is no dispute that appellants' proofs of claim constituted prima facie evidence of the validity and amount of

their collective claim, as their submissions comported with Bankr. R. 3001(c), which requires that "[w]hen a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim." The burden of persuasion then shifted to debtor, who presented testimonial evidence that he complied with the Agreement by its terms and pursuant to Smith's instructions. Debtor emphasized ¶ 8(a) of the Agreement, which states: "so long as Sub-Agent complies with each and every obligation owed to Supervising Agent and the Company hereunder and otherwise, . . . (i) the Supervising Agent will bear the penal liability exposure with respect to all Bonds written by the Sub-Agent and the Designated Sub-Sub Agents within the scope of their authority." He claimed: "I entered this contract as a non-liable contractor. That's what was told to me by Vin Smith." (Feb. 23, 2006 Hrg. Tr., R-00315 et seq., at 31.) In addition, appellee testified:

>    Q:   You said, you mentioned that you got an invoice occasionally that said someone skipped and now pay 5,000 because that's what they pay out?
>
>    A:   Right.
>
>    . . .
>
>    Q:   How often did that happen?
>
>    A:   That happened a couple times and that really upset me because then I would call Vin Smith and say, you know, I have a non-liable contract, why am I being billed for this individual skipping. And then he would say to me, well, what case is it, and then he was I'll [sic] take care of it with

>       the risk coordinator and then he would talk to the
>       risk coordinator.  That was it. . . .
>
> Q:    You wouldn't get another bill --
>
> A:    I would not get another bill in the mail.

(Id. at 65.)  Guadalupe stated that he believed that he complied with the Agreement and that "no one has ever from the Capital Bonding Corporation, Vin Smith, no one has ever told [him that he] did not comply."  (Id. at 70.)  Neither party called Smith as a witness to testify.

To prove their claim of Guadalupe's indebtedness, appellants rely on 402 pages of invoices, print-outs of computer spreadsheets, checks, and other documentation encapsulated in a two-page Summary of Premiums, Judgments and Fees Owed[4] prepared by Angelo DeLorenzo, who had worked for CBC from September 2002 to March 2004 and was retained by CBC in July 2004 to review CBC's accounts.  Although DeLorenzo had no personal knowledge about the basis for the invoices sent to debtor, he testified that he had "determine[d] that [Guadalupe] owed CBC money" (id.

---

[4] Unfortunately, the two copies of the Summary provided to the Court are illegible.  All numerical figures listed herein are from Judge Krechevsky's opinion or from DeLorenzo's testimony on the Summary at the March 31, 2006 hearing.
   The Summary lists 107 itemized premiums, judgments, fees, etc. in chronological order, ranging in date from February 20, 2001 to October 25, 2005.  The total amount due is stated as $719,038.38, consisting of $12,469.00 in premiums, $695,875.00 in forfeiture judgments, $7,950.00 in risk, $677.25 in attorneys' fees, and $2,267.63 in recovery fees. However, when added together, the sum of the subordinate figures is $719,238,88, not $719,038.38.

at 26-27). The documents from which he made this determination consisted of the invoices, checks, and correspondence comprising appellants' 402-page claim documentation, which is arranged in no logical order and includes often illegible printouts of data screens from a computer program, making it nearly impossible to ascertain how the documentation relates to the Summary sheets.

The Bankruptcy Court credited Guadalupe's testimony that whenever he received bills from CBC during his employment, Smith resolved these mistaken invoices. Judge Krechevsky found that "[t]he CBC records . . . support[] the debtor's testimony that Smith was satisfied that the debtor was not liable for the forfeitures. At least ten forfeitures shown in the [S]ummary . . . as having occurred in 2001 were not invoiced until 2004," 2006 Bankr. LEXIS 1246, at *11,[5] and there was no subsequent correspondence manifesting any different view from Smith about the propriety of these invoices. Thus, the Bankruptcy Court's crediting Guadalupe's testimony was not clearly erroneous, and

---

[5] Taking the example included in the Bankruptcy Court decision of bonded individual Buddy Beaver, the "Forfeiture Due From [debtor]" for "FORFEITURE PAID, MISSING FILE. MISSING POWER [OF ATTORNEY]" was articulated as $15,000, $25,000, $100,000, and $250,000 in four separate invoices sent to debtor on November 5, 2001. (The Summary connects the Beaver invoices to a $391,000 check paid to the Division of Criminal Justice, although the check is unmarked as to the reason for payment.) Despite the enormous money amounts of the Beaver forfeitures, no further action was taken on them until June 25, 2004 — after Smith and debtor were no longer with CBC — when a $250,000 invoice was sent to debtor.

9

its conclusion based on that testimony, CBC's scattered documentary evidence, and the testimony of DeLorenzo (with no personal knowledge) that appellants failed to prove Guadalupe's breach of the Agreement is not erroneous as a matter of law or fact.

### B. CBC's invoicing practices and debtor's requirement to keep duplicate records

Appellants argue that debtor breached his record-keeping requirements under the Agreement and that the Bankruptcy Court should have drawn an adverse inference from the debtor's missing records to find in their favor. In the absence of any duplicate record requirement or invoicing practices specified in the Agreement, appellants' argument requires that Guadalupe's testimony that he conformed to Smith's instructions be discredited.[6]

The Agreement states: "Sub-Agent shall keep complete records, in such form as the Company and Supervising Agent may indicate, of all bond business written by Sub-Agent for the Company, and all such records and all accounts, documents, vouchers, and memoranda connected with the business shall be open at all times to the Company and Sub-Agent." (Agreement ¶ 4.) In

---

[6] Despite appellants' contention that the Bankruptcy Court should have concluded as a matter of law that the debtor was required to keep duplicate records, no such provision existed in the Agreement, and they offer no other authority for this argument.

addition, debtor was required to "transmit to Supervising Agent in such form and according to such routine as the Company and Supervising Agent may from time to time prescribe, reports on all bond business written by or through Sub-Agent . . . [and to] promptly file as required with the Company and Supervising Agent copies of any documents executed by him on behalf of the Company." (Id. ¶ 5.) Guadalupe's record-keeping tasks thus depended in part on what Smith prescribed, but neither these nor any other provisions of the Agreement required Guadalupe to maintain anything but "complete records" for inspection and in "such form" as Smith directed.

Nor did the Bankruptcy Court err in declining to draw an adverse inference from debtor's loss of his files. Guadalupe testified that in March 2004 Harco "took everything. . . . copies of files, they took the original files" in March 2004. Thus, the loss of Guadalupe's "copies of the files [which he] kept . . . at the office" caused no prejudice to appellants, since they had one set which could be used if, in fact, they contained any negative evidence. Moreover, the Bankrupty Court's crediting of debtor's testimony as to how his copies went missing was amply supported by the hearing record. ("[T]he only thing that was left there was copies of my files." (Feb. 23, 2006 Hrg. Tr. at 74-75.)) The former landlord of his New Britain office, Francis H. Shank, III, testified at the hearing that in January 2005, after debtor

had moved out of the space in late 2004, Shank entered and found boxes of papers, which he sorted through in February 2005 and identified as "files, checkbooks, old checks, a lot of paperwork," and he "had someone just clean it out." (Mar. 31, 2006 Hrg. Tr. at 6-9.) According to Shank, debtor "didn't instruct [him] to destroy those records" and "was very mad" and "was about to cry" when he returned to the space one month after the documents had been thrown out. (Id. at 9-10.) According to debtor, it was CBC and not he who was disorganized, "[v]ery often" failing to properly credit premiums that he paid between 1999 and 2004: "First sometimes they would say I didn't send in the file, sometimes I didn't send the report, then other days they would call — they would send me a follow-up sheet saying that they found the file, they found the report, and that we did send them in." (Mar. 31, 2006 Hrg. Tr. at 77.)[7]

The testimony of debtor and of Shank, as well as CBC's records, sufficed to rebut the presumption of validity of appellants' claims, leaving them to prove Guadalupe's breach and resulting liability to them by a preponderance of the evidence. As the Bankruptcy Court noted, it is striking that appellants produced no "evidence of follow-up correspondence that would refute the debtor's testimony that, on the few occasions when he

---

[7] This characterization is certainly consistent with the state of the documentation submitted by appellants.

did receive an invoice for a forfeiture, he would call Smith to question the charge; . . . and that the debtor would receive no further bills or other follow-up for such matters." 2006 Bankr. LEXIS 1246, at *11. While Guadalupe offered no other corroborating proof of his conversations with Smith regarding book-keeping and his non-obligation for penal liability, the creditors' testimonial and record evidence did not and does not demonstrate that it is more likely than not that debtor breached the Agreement.

## IV. Conclusion

For the foregoing reasons, Bankruptcy Judge Krechevsky's June 13, 2006 Ruling is AFFIRMED.

                                      IT IS SO ORDERED.

                                      /s/

                                      Janet Bond Arterton
                                      United States District Judge

**Dated at New Haven, Connecticut this 15th day of March, 2007.**